72476, 72477. CARTER v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ATLANTA; and vice versa.
(347 SE2d 264)

DEEN, Presiding Judge.

On March 19, 1973, Katie Carter and her son, Eddie, executed a retail installment contract for the purchase of a new mobile home from Scenic Mobile Sales, which immediately assigned its rights in the contract to First Federal Savings & Loan Association of Atlanta (First Federal). The contract provided for a cash price of $7,926 minus a down payment of $769, insurance premiums totalling $1,158 ($740 for credit life insurance on Eddie Carter, $388 for property damage insurance, and $30 for vendor's single interest insurance), and "other" official fees of $35, all of which was financed; the specified finance charge was $6,270.40. Almost from the beginning, the Carters failed to make timely payments under the contract. Eventually, Eddie Carter abandoned the mobile home and in May 1976, Katie Carter and First Federal executed a transfer of equity, purporting to eliminate Eddie Carter's interest in the property. This document essen-

tially reiterated the original financing arrangement.

Because Katie Carter was unable to keep up the payments under the contract, First Federal filed a personal property foreclosure on March 28, 1979, to recover possession of the mobile home (and obtained an interlocutory writ of possession). In that petition, First Federal alleged that Katie Carter owed $11,494.43, which amount was determined by subtracting only the Carters' payments from the original amount due, and rebating no unearned interest or insurance premiums. First Federal later amended the petition to reflect the resale of the collateral and to rebate interest charges using the Rule of 78's method, changing the amount owed to $6,475.46. On January 7, 1980, First Federal commenced this action seeking to recover $5,382.48, as the remaining indebtedness (with the interest rebated by the pro rata basis), and $126 towing charges, $332 legal expenses incurred in repossessing the mobile home, and $563.25 attorney fees due under the terms of the sales contract. Katie Carter defended on the bases that First Federal had wilfully violated the Georgia Motor Vehicle Sales Finance Act (MVSFA) (OCGA § 10-1-30 et seq.) and had not disposed of the collateral in a commercially reasonable manner, and by counterclaim sought statutory penalties for those violations.

Following a bench trial, the trial court found that First Federal had violated the MVSFA in computing the accelerated balance in the personal property foreclosure by rebating the unearned interest with the Rule of 78's method, but that this violation had not been wilful; that the disposition of the collateral had been done in a commercially reasonable manner; and awarded First Federal $454.71 plus $68.21 attorney fees (computed under the terms of the sales contract) and assessed costs of the action against Katie Carter. The $454.71 award for the deficiency was determined by taking the $7,926 cash price of the mobile home and the $1,168 for insurance premiums (the total amount financed) and subtracting the $769 down payment, $4,110.04 in payments made by the Carters, $660.25 rebate for the insurance premiums, and the $3,100 in proceeds from the sale of the collateral. In Appeal No. 72476, Katie Carter appeals that award, and in Appeal No. 72477, First Federal cross-appeals from the trial court's failure to strike Carter's counterclaim for statutory penalties for First Federal's MVSFA violation.

John Tansey, a vice president of First Federal in charge of the mobile home lending department, testified extensively about the disposition of the collateral and the rebating of the unearned interest charges. The repossessed mobile home was towed to the sales lot of Scenic Mobile Sales, where it was displayed to the general public for sale. At the same time, First Federal notified approximately ten wholesalers of the repossession and invited them to inspect the mobile home and submit bids. Katie Carter was duly notified of this in-

tended method of disposition. First Federal eventually received bids of $2,900, $3,050, and $3,100, and accepted the last bid. At the time of the repossession, some items in the mobile home, such as the dinette set, a sofa, and a chair, were in poor condition, but Tansey indicated that it was in overall good condition; he estimated the mobile home's value to be around $3,000. He considered the 1979 N.A.D.A. valuation of that type of mobile home, which ranged from $7,790 to $8,233, to be inaccurate because that valuation actually exceeded the original 1973 cost of the mobile home, and in his fourteen years of experience in dealing with mobile homes he had never known of such to appreciate. Tansey noted that this method of disposing of the collateral was typical of other lenders in the Atlanta, Georgia, area, specifying General Electric Credit, Person to Person, CIT Finance, and Kensington Finance.

Concerning the rebating of unearned interest charges in acceleration of debt cases, Tansey stated that First Federal had always employed the Rule of 78's method, until around August 1979 when they first became aware of a Georgia Court of Appeals decision that mandated use of the pro rata method. (It appears that First Federal actually became aware of its erroneous practice in another case litigated in 1979.) After August 1979, First Federal had ceased using the Rule of 78's method to rebate unearned interest charges in such cases. (At the trial, an attorney testifying on behalf of Katie Carter indicated that as of 1979 the general practice among lenders for the previous five years had been to rebate unearned interest by the Rule of 78's method upon prepayment of the indebtedness, and to rebate by the pro rata method upon acceleration of the indebtedness due to default.)

Tansey also testified that the $35 charge for "other" official fees covered the costs of processing the credit application and the title fee; on cross-examination, however, he acknowledged that in an earlier explanation of the charge, he had not indicated that any portion of it went towards the title fee. (The contract had a separate space specifically for title fees that was marked through.) Tansey further acknowledged that, with regard to the vendor's single interest insurance, the insurer had not waived all rights of subrogation against Katie Carter. (Tansey also served as agent for that insurer.) *Held*:

1. In Appeal No. 72476, Carter contends that the trial court's order contained insufficient findings of fact and conclusions of law required by OCGA § 9-11-52 (a). In reviewing the trial court's order which sets forth facts brought out at trial, we find that it provides sufficient findings and conclusions as to afford intelligent review of the matter. *Paxton v. Trust Co. Bank*, 245 Ga. 834 (268 SE2d 154) (1980); see also *Doyal Dev. Co. v. Blair*, 133 Ga. App. 613 (211 SE2d 642) (1974).

2. In computing the accelerated balance in its petition for a writ of possession, First Federal's initial failure to rebate any unearned interest and subsequent rebating such charges according to the Rule of 78's method violated the MVSFA. *Cook v. First Nat. Bank*, 130 Ga. App. 587 (203 SE2d 870) (1974); *Bozeman v. Tifton Fed. Sav. &c. Assn.*, 164 Ga. App. 260 (297 SE2d 49) (1982). This excessive "finance charge" cannot be later cured by amendment. *Bozeman v. Tifton Fed. Sav. &c. Assn.*, supra. Any violation results in the forfeiture of any finance charge, delinquency, or collection charge on the contract, and a wilful violation subjects the creditor to statutory penalties. OCGA § 10-1-38, generally.

Carter contends that the trial court erred in finding that First Federal's MVSFA violation was not wilful. All of the evidence concerning this issue is circumstantial, and it follows that having evidence to support factual findings about the circumstances of the violation is of paramount importance. The trial court made two clearly erroneous findings in this matter: (1) that First Federal had rebated unearned interest by the Rule of 78's method in the original petition for writ of possession, when in fact it was uncontroverted that no rebate whatsoever was made; and (2) that First Federal rebated unearned interest charges by the pro rata method when it amended the petition, when in fact First Federal admitted that the Rule of 78's was employed. First Federal did not use the pro rata basis until it commenced this action in January 1980. For all that appears in the order, the trial court's holding on the wilfulness issue is based in part on these clearly erroneous factual findings. Accordingly, that portion of the order must be reversed and new trial had. See *Dotson v. Henry County Bd. of Tax Assessors*, 161 Ga. App. 257 (287 SE2d 696) (1982); *Palace Indus. v. Craig*, 177 Ga. App. 338 (339 SE2d 313) (1986).

3. Carter also contends that the trial court erred in determining the amount of the deficiency by including the premiums for credit life insurance and the vendor's single interest insurance in the unpaid balance to be financed, rather than as part of the finance charge. OCGA § 10-1-33 (b) provides that the unpaid balance "shall be determined in accordance with Section 226.8 (c) of Regulation Z promulgated by the Board of Governors of the Federal Reserve System pursuant to Title I (Truth in Lending Act) and Title V (general provisions) of the Consumer Credit Protection Act (Public Law 90-321, 82 Stat. 146 et seq.) as the same existed upon its becoming effective on July 1, 1969." Under Section 226.8 (c) (4) of Regulation Z, the unpaid balance consisted of the unpaid cash price plus "[a]ll other charges, individually itemized, which are included in the amount financed but which are not part of the finance charge." 12 CFR § 226.8 (c) (4); *Ford Motor Credit Co. v. Spann*, 153 Ga. App. 535, 537 (265

SE2d 863) (1980). The charges for the insurance premiums were clearly itemized on the sales contract and were thus properly included as part of the unpaid balance. Carter's reliance upon 12 CFR § 226.4 (d) and § 226.4 (a) (5) is misplaced, since there is no authority for applying other Truth-in-Lending Act regulations to MVSFA claims.

Also, the fact that Carter may not have requested credit life insurance at the time of the purported transfer of equity is of no consequence. Katie Carter, as co-signor of the original sales contract, was liable for the premium for the credit life insurance requested by Eddie Carter, and the purported transfer of equity, to which Eddie Carter was not a party, did nothing to relieve her of that obligation.

The $35 charge for "other" official fees should have been classified as part of the forfeited finance charge, because it was not sufficiently identified. See *Ford Motor Credit Co. v. Spann*, supra. However, it is apparent that the trial court actually omitted this charge from the unpaid balance.

4. Carter also contends that the award for attorney fees under the sales contract must be stricken, because such fees constitute a forfeited collection charge under OCGA § 10-1-38 (b). We agree. Compare *Palace Indus. v. Craig*, supra.

5. OCGA § 11-9-504 (3) provides that disposition of the collateral "may be by public or private proceedings . . . but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." If a secured party disposes of the collateral in conformity with the usual commercial practices among dealers in that type of property, he has sold it in a commercially reasonable manner. OCGA § 11-9-507 (2), generally; *Farmers Bank &c. v. Hubbard*, 247 Ga. 431 (276 SE2d 622) (1981). There was testimony that other lenders in the Atlanta area disposed of repossessed mobile homes in the same method and manner that First Federal followed in this case, and that the price received for the mobile home approximated its worth. Displaying the mobile home at a mobile home dealer's lot, where solicited bidders and the general public as well could view it, certainly was reasonable. This evidence supported the trial court's conclusion that First Federal's sale of the repossessed collateral was conducted in a commercially reasonable manner.

6. In Appeal No. 72477, First Federal contends that the trial court erred in failing to strike Carter's counterclaim seeking statutory penalties for an allegedly wilful MVSFA violation, on the basis that the counterclaim should have been asserted in the preceding writ of possession action. Pretermitting the question of whether the compulsory counterclaim rule contained in the Civil Practice Act applies to a statutory personal property foreclosure, which has its own special procedure, the instant case certainly provides no basis for holding that Carter's claim for statutory penalties for a MVSFA violation was

waived by her failure to assert it in the precedent writ of possession action.

A personal property foreclosure action for possession under a consumer contract is a different cause of action from a suit for a money judgment under the same contract. *Candler I-20 Properties v. Inn Keepers Supply*, 137 Ga. App. 94 (222 SE2d 881) (1975); see also *Porter v. Midland-Guardian Co.*, 242 Ga. 1 (247 SE2d 743) (1978). First Federal in fact filed such separate actions, commencing the personal property foreclosure on March 28, 1979, and the instant action for a deficiency on January 7, 1980. Following the issuance of an interlocutory writ of possession, the foreclosure action actually lay dormant until December 2, 1983, when the trial court entered a final order which was consented to by both parties. In that order, the trial court noted that "all questions concerning the respective monetary obligations of the parties regarding the subject contract are and have been the subject of a separate action in this court . . . and that the parties agree that all such issues should be resolved in that action and not this one," and terminated the foreclosure action "without prejudice to the disposition of any issue pending" in the other action. First Federal may not sandbag Carter by actively participating in this disposition, which in effect provided that the counterclaims were to be litigated in the deficiency action, and then later assert that any such counterclaim should have been raised in the foreclosure action.

Carter has moved this court to impose a penalty against First Federal for filing a frivolous cross-appeal, pursuant to our Court of Appeals Rule 26 (b). Under the circumstances of this case, and in particular First Federal's remarkable failure to discuss the content and effect of the trial court's final order in the foreclosure action, we find the cross-appeal not only without merit but frivolous, and assess a penalty of $298 against First Federal.

7. Carter also attacks the trial court's assessment of all the costs of this action against her. (The costs actually exceeded the judgment in this case.) Although it is within the trial court's discretion to apportion costs, generally, upon the termination of an action, costs are taxed against the losing party. *Newsome v. Graham*, 254 Ga. 711 (334 SE2d 183) (1985). Because more proceedings in this case must follow, however, we need not now address this enumeration.

*Judgment affirmed in part and reversed in part in Appeal No. 72476; judgment affirmed in Appeal No. 72477. Benham and Beasley, JJ., concur.*

DECIDED JUNE 12, 1986 —
REHEARING DENIED JUNE 30, 1986.

*Kenneth G. Levin, Marian Burge*, for appellant.
*Albert B. Wallace*, for appellee.